UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| MICHAEL BRANDO TRUSSEL, ) | Case No. 1:12-bk-10001-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION DENYING
21 ASSET MANAGEMENT HOLDING, LLC'S MOTION TO COMPEL**

A creditor in this Chapter 7 bankruptcy case, 21 Asset Management Holding, LLC ("Creditor"), moves to compel the Debtor, Michael Trussel, to "surrender" real property securing its loan, alleging he has not complied with the obligations imposed by § 521(a)(2)(A) of the Bankruptcy Code.[1] Creditor primarily relies on this Court's prior ruling in *In re Plummer*,[2] in which the Court endeavored to define what the word "surrender" requires in the context of a debtor's compliance with the requirements of § 521(a)(2)(A).[3] Both parties, however, misstate the issue. The issue in this case is *not* whether Trussel has complied with his intent to surrender, but rather whether he has complied with his stated intent to *reaffirm* the debt.

Creditor holds a note secured by a first mortgage on the Debtor's real property (the "Property") in the approximate amount of $320,000.[4] Creditor initiated a foreclosure action against the Property on December 30, 2009. Trussel filed for bankruptcy relief on January 2, 2012, initially under Chapter 11. The Court converted his case to a Chapter 7 case on January 17,

---

[1] Motion to Compel, Doc. No. 160; Debtor's Response, Doc. No. 171; Creditor's Reply, Doc. No. 173. All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq*.

[2] 513 B.R. 135 (Bankr. M.D. Fla. 2014).

[3] In *Plummer*, the Court held: "When a debtor states his intent to surrender collateral under § 521(a)(2)(A), he complies with that intention, for purposes of § 521(a)(2)(B), when he allows the secured creditor (or in rare cases the Chapter 7 trustee) to obtain possession by available legal means without interference." *In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014).

[4] The exact amount owed at the time of filing was $318,747.37, according to the Debtor. The principal amount of the loan is appears to be $189,000. (Amended Foreclosure Complaint, Doc. No. 171-3 at ¶ 4.)

2013.[5] As is required of a Chapter 7 debtor, Trussel filed his § 521(a)(2)(A) Statement of Intentions indicating he intended to reaffirm the debt on the Property.[6] Trussel and Creditor were unable to reach a reaffirmation agreement. After Trussel received his Chapter 7 discharge,[7] Creditor continued its state court foreclosure action. Trussel raised two affirmative defenses in the foreclosure action alleging: (1) Creditor does not have standing to enforce the note, and (2) Creditor did not provide Trussel with proper notice of acceleration as required by the mortgage.[8] Creditor seeks an order by this Court compelling Trussel to stop asserting his affirmative defenses in the state foreclosure action.

Creditor argues that, because Trussel did not perform his intent to reaffirm his debt, he instead must surrender the property. And, based on this Court's ruling in *Plummer*, Creditor argues that to effect surrender Trussel must lay down his sword and abandon his two affirmative defenses raised in the state court foreclosure. Trussel agrees with Creditor's contention that failure to reaffirm requires surrender, although he disagrees with what actions surrender requires. The Court, however, does not accept the legal conclusion that a debtor who cannot reach a reaffirmation agreement with a creditor automatically must surrender the property.

If a Chapter 7 debtor lists in his schedules a debt secured by property of the estate, § 521(a)(2)(A) requires the debtor to file a statement of intentions "with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."[9] Section 521(a)(2)(B) then requires the debtor to "perform his intention with respect to such property" within 30 days, also emphasizing that "nothing in paragraphs (A) or (B) . . . shall alter the debtor's or the trustee's rights with regard to [the

---

[5] Doc. No. 98.
[6] Doc. No. 111.
[7] Doc. No. 150, entered on October 20, 2013.
[8] Amended Answer to Complaint and Affirmative Defenses, Doc. No. 171-2.
[9] 11 U.S.C. § 521(a)(2)(A) (2014).

collateral] under this title."[10]

Consistent with his duties under § 521(a)(2)(A), Trussel timely filed a statement of intentions indicating he intended to reaffirm the debt with Creditor.[11] Trussel and Creditor however were unable to agree to terms and never executed a reaffirmation agreement. The precise reason for the failed reaffirmation is unclear. Creditor's motion states: "[Creditor] and Debtor attempted to negotiate a reaffirmation agreement but, ultimately, were not able to come to an agreement."[12] Trussel also does not discuss why the reaffirmation negotiations broke down.[13]

When a debtor and creditor reach an impasse in negotiating a reaffirmation agreement, such as here, it does not automatically follow that the debtor filed to comply with his or her § 521(a)(2)(B) obligations. Instead, if a debtor agrees to reaffirm on the parties' original agreement, "the debtor must take some affirmative act to assure that the creditor retains its rights to enforce the parties' original agreement."[14] In *In re French*,[15] I previously ruled that when a creditor and debtor reach an impasse in negotiating a reaffirmation agreement, "the debtor has taken sufficient acts to perform his or her intention to reaffirm the debt" when her or she "signs a reaffirmation agreement which (i) meets the requirements for approval articulated in Section 524(c) of the Bankruptcy Code, (ii) binds the debtor to the terms of parties' prior agreement, and (iii) is enforceable by the creditor."[16]

In this case, neither Creditor nor the Debtor introduced evidence showing what steps

---

[10] 11 U.S.C. § 521(a)(2)(B) (2014).
[11] Doc. No. 111.
[12] Doc. No. 160 ¶ 5.
[13] *See* Doc. No. 171.
[14] *In re French*, 185 B.R. 910, 914 (Bankr. M.D. Fla. 1995).
[15] 185 B.R. 910, 914 (Bankr. M.D. Fla. 1995).
[16] *Id.* In *French*, the creditor presented the debtor with a reaffirmation agreement that included attorney fees associated with the reaffirmation, as the original loan document contained an attorney fee provision for collection costs. *Id.* at 911. The debtor refused to sign a reaffirmation agreement with the attorney fees lumped in but was willing to sign a reaffirmation agreement on the original terms. *Id.* I held "if a debtor is willing to reaffirm the terms of the original agreement, has attempted in good faith to negotiate a reaffirmation agreement with the creditor, and has taken all acts otherwise necessary to reaffirm a debt under Section 524 of the Code, then this Court would deem that the debtor has complied with the requirements of Section 521 as required by the Eleventh Circuit Court of Appeals in Taylor." *Id.* at 914.

Trussel took or did not take towards reaffirming the debt. The Court therefore cannot conclude whether or not he complied with his stated intent to reaffirm. If Trussel was ready and willing to reaffirm according to the terms of the original contract, then he may have complied with his duties notwithstanding his inability to obtain Creditor's agreement. Nevertheless, even assuming Trussel did *not* comply with these requirements, the typical remedy for failure to comply with intent to reaffirm is not the injunctive relief Creditor seeks—an injunction compelling him to cease defending the state foreclosure case.

Prior to 2005's Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), no clear remedy existed for a debtor's noncompliance with § 521(a)(2).[17] BAPCPA added a remedy in § 362(h), which provides for relief from the automatic stay if a debtor fails to comply with his or her § 521(a)(2) duties with respect to *personal property*.[18] But, where real property is at issue and § 362(h) does not apply, the issue of what remedies are available to a creditor "is no easy answer."[19]

By and large, the preferred remedy for creditor when a debtor fails to comply with his or her § 521(a)(2)(A) duties is to grant the creditor relief from the automatic stay.[20] "[B]arring unusual facts, when a debtor has honestly tried to reaffirm a debt but cannot because either the debtor's attorney or the bankruptcy court concludes that the reaffirmation would cause the debtor an undue hardship, the appropriate remedy is to grant the creditor relief from the automatic stay."[21]

In *Sullivan-Anderson*, this Court faced the same question under somewhat different circumstances. There, the debtor and the creditor reached a reaffirmation agreement, but the

---

[17] *See In re Sullivan-Anderson*, 307 B.R. 726, 729 (Bankr. M.D. Fla. 2003).
[18] *See* 11 U.S.C. § 362(h).
[19] *In re Donnell*, 234 B.R. 567, 571 (Bankr. D.N.H. 1999).
[20] *See, e.g.*, *Sullivan-Anderson*, 307 B.R. at 729; *Donnell*, 234 B.R. 567; *In re Silvestri*, 294 B.R. 421 (Bankr. D.R.I. 2003); *In re Amoakohene*, 299 B.R. 196 (Bankr. N.D. Ill. 2003).
[21] *Sullivan-Anderson*, 307 B.R. at 729.

debtor's attorney declined to provide the required § 524(c)(3) certification that the reaffirmation agreement did not impose an undue hardship on the debtor.[22] There, I held that "[t]he debtor has done all asked of him or her and, while the debtor cannot deliver an enforceable reaffirmation agreement, stay modification is the only appropriate consequence."[23]

Similarly, in *In re Donnell*,[24] decided pre-BAPCPA,[25] the debtor indicated an intent to reaffirm on his statement of intentions but was unable to come to an agreement with the creditor.[26] The creditor filed a motion to compel the debtor to reaffirm the debt, redeem the debt, or surrender the collateral.[27] After the creditor filed the motion, a discharge was entered, which prevented the debtor from filing a reaffirmation agreement.[28] Thus, because the debtor could no longer reaffirm the debt (and, in any event, could not come to an agreement with the creditor) and could not afford to redeem the debt, the court was left to evaluate whether compelling the debtor to surrender was the appropriate relief.

The *Donnel* court observed that compelling a debtor to surrender collateral "appears to stand toward one extreme of the remedy continuum" and "is in the nature of specific performance or a mandatory injunction and should thus be reserved for an extraordinary case where other relief is inadequate."[29] Courts should sparingly enter injunctions compelling

---

[22] *Id. See generally* 11 U.S.C. § 524(c).
[23] *Sullivan-Anderson*, 307 B.R. at 729. *See, e.g.*, *id.*; *In re Moustafi*, 371 B.R. 434 (Bankr. D. Ariz. 2007) (holding that where court disapproved reaffirmation agreement, debtor still complied with § 521(a)(2)(A) obligations and could retain the collateral so long as debtor was current on payments); *cf. Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161 (E.D.N.C. 2008) (holding court must not approve a reaffirmation for a debtor to "enter into" a reaffirmation agreement for purposes of § 521(a)(6) and § 362(h)).
[24] *In re Donnell*, 234 B.R. 567 (Bankr. D.N.H. 1999).
[25] *Donnel*, *id.*, is still persuasive because (1) *Donnell* already followed the "exclusivity" approach long supported by the Eleventh Circuit, which nearly all courts have adopted since language added in BAPCPA clarified the issue; and (2) BAPCPA's language addition of § 362(h) as a remedy for noncompliance of § 521(a)(2) only applies to personal property, while at the same time Congress expanded § 521(a)(2)(A)'a reach to all property of the debtor serving as collateral for a debt.
[26] *Donnell*, 234 B.R. at 569.
[27] *Id.*
[28] *Id.* ("Because an order discharging the Debtors was entered on April 28, 1999, and thus pursuant to § 524(c)(1) reaffirmation is no longer available . . . ."). Section 524(c)(1) requires a reaffirmation agreement to be "made before the granting of the discharge under section 727." 11 U.S.C. § 524(c)(1).
[29] *Donnell*, 234 B.R. at 572.

surrender of collateral for two reasons. First, if a debtor refuses to comply with the court's order compelling surrender, the issuance of a contempt order or the use of the U.S. Marshalls to enforce such an order "would place a bankruptcy court down a precarious path and should thus be avoided if at all possible."[30] Second, the court observed that if a creditor obtains an order directing the debtor to surrender, often the creditor could not dispose of the collateral without also obtaining relief from the stay.[31] Therefore, relief from stay is the best remedy to enforce a debtor's obligations to comply with his or her § 521(a)(2) duties.[32]

The *Donnell* decision goes on to discuss other potential remedies—including dismissal under § 707(a) and holding the debt nondischargeable under § 523(a)(6)—but settles on relief from the § 362 automatic stay as the most appropriate remedy, like this Court did in *Sullivan-Anderson*.[33] This Court agrees with *Donnell* and holds that "[a] motion to compel under § 105 should be reserved for unique factual settings and not used as a routine part of providing remedies to secured creditors for a debtor's failure to perform his or her intention under [§ 521(a)(2)(B)]."[34] Thus, for "garden variety" violations of § 521(a)(2)(B), relief from the automatic stay is the appropriate remedy. Determination of whether a case is "garden variety" or not turns on the facts and circumstances of the case.

In cases like this one, where Trussel stated an intent to reaffirm the debt but ultimately the Debtor and Creditor could not come to an agreement, the Court would look for extraordinary circumstances before issuing an injunction ordering the Debtor to surrender the Property. Did the debtor attempt, in good faith, to reach a reaffirmation agreement with the creditor? Creditor has not pointed to any facts suggesting Trussel acted in bad faith.

The Court cannot discern any factual circumstances warranting such extreme relief as an

---

[30] *Id.*
[31] *Id.* at 573–74.
[32] *Id.* at 574.
[33] *Id.* at 574–75; *In re Sullivan-Anderson*, 307 B.R. 726, 729 (Bankr. M.D. Fla. 2003).
[34] *Donnell*, 234 B.R. 575.

injunction under § 105.  "The mere fact that ordering surrender might be more efficient for the [Creditor] from a process standpoint . . . is not enough to warrant a more serious remedy."[35] Rather, the Court concludes the Creditor primarily is seeking an injunction to preclude or to short-circuit Trussel's right to raise legitimate defenses in the pending state court foreclosure. Trying to avoid responding to legitimate defenses does not constitute sufficient compelling cause to obtain the extraordinary remedy of an injunction.

Section 521(a)(2)(A) requires a debtor to do what he says he is going to do.  If a debtor does not follow through with his or her stated intention, relief from the automatic stay is the preferred remedy absent compelling circumstances. Creditor has failed to establish and such compelling circumstances. The Court declines to grant such extreme relief. A separate order consistent with this Memorandum Opinion shall be entered. Accordingly, it is

**ORDERED:**

1. 21 Asset Management Holding, LLC's Motion to Compel Debtor to Surrender Real Property (Doc. No. 160) is denied.

DONE AND ORDERED in Orlando, Florida, March 5, 2015.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Clerk's Office to directed to serve a copy of this Order on all interested parties.

---

[35] *In re Donnell*, 234 B.R. 567, 575 (Bankr. D.N.H. 1999).